IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | | |
|---|---|---|
| Bay Island Sportswear, Inc. and Wildcat Retro Brands, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | **COMPLAINT** |
| vs. | ) ) | **JURY TRIAL REQUESTED** |
| The Ohio Casualty Insurance Company, Liberty Mutual Insurance, and Priority-1, Inc., | ) ) ) ) | |
| Defendants. | ) | |

Comes now the Plaintiffs Bay Island Sportswear, Inc. and Wildcat Retro Brands, LLC (hereinafter collectively referred to as "Bay Island") complaining of the Defendants and alleging allege as follows:

## THE PARTIES

1.     The Plaintiff Bay Island Sportswear, Inc. is a corporation organized and existing under the laws of the State of South Carolina with its principal place of business in Greenwood County, South Carolina.  The Plaintiff Wildcat Retro Brands, LLC is a limited liability company organized in the State of Tennessee with its principal place of business located in the State of South Carolina with facilities in South Carolina and California. The companies have common ownership and facilities in the United States and overseas together with other foreign country companies also sharing common ownership. The Plaintiffs are collectively referred to as "Bay Island".

2.     Bay Island manufactures and sells textile products, primarily t-shirts which are

distributed by both companies and, contracts for the manufacture of textile goods both in the U.S. for "Made in the USA" products, and overseas. Bay Island has manufacturing locations overseas as well as in Greenwood, South Carolina and, through its subsidiary Wildcat, has warehouse storage facilities in California that, among other things, assists in the transfer of product from domestic and overseas locations.

3.      The Defendant The Ohio Casualty Insurance Company is, upon information and belief, a corporation organized and existing under the laws of one of the states of the United States other than South Carolina.  Further, upon information and belief, Ohio Casualty is a wholly owned subsidiary of the Defendant Liberty Mutual or an underwriting company under the direct control of Liberty Mutual.

4.      The Defendant Liberty Mutual Insurance is, upon information and belief, a corporation organized and existing under the laws of one of the states of the United States other than South Carolina but does business within South Carolina through the sale of insurance policies to South Carolina residents and through the adjusting of claims resulting from those insurance policies.

5.      At all times relevant, Ohio Casualty issued a policy of insurance coverage to Bay Island listing both Bay Island Sportwear Inc. and Wildcat Retro Brands, LLC as insureds and providing coverage against losses incurred during the transportation of goods or products owned by Bay Island. The Policy was fully underwritten by Liberty Mutual, and Liberty Mutual handled all claims process necessary under the policy. The Policy purchased by Bay Island was purchased through an insurance broker, Correll Insurance Group, LLC located in Spartanburg, South Carolina who is a licensed broker for Liberty Mutual insurance policies.

6.      For the forgoing reasons, the Defendants Liberty Mutual and Ohio Casualty are

2

collectively referred to as "Liberty Mutual."

7.      Priority-1, Inc. is a corporation organized and existing under the laws of one of the states of the United States other than South Carolina. Priority-1, Inc. provides transportation services to companies who need overland (truck) transport of goods. Priority-1, Inc. is hereinafter referred to as "Priority."

8.      At all times relevant hereto, Bay Island contracted with Priority to provide transportation services for products that it wanted transferred from its warehouse facility in California to its facility in Greenwood, South Carolina.

## JURISDICTION AND VENUE

9.      The Court has diversity jurisdiction pursuant to 28 U.S.C. Sec 1332 as the matter is between citizens of different states and the amount in controversy exceeds $75,000.00

10.     Venue is proper in this District and in the Greenwood Division pursuant to 28 U.S.C.  Sec 1391(b)(1) and /or (b)(2) and Local Rule 3.01(A)(1) because the Plaintiff resides therein and because a substantial part of the transaction or occurrence underlying this Complaint occurred within this District and Division including among other things the insurance coverage in questions being procured through a broker in South Carolina for a company whose incorporation and principal place of business was South Carolina; the insured goods intended transit for  a company whose principal place of business was within South Carolina; the actual insuring of goods intended for transport to South Carolina; and the transportation of goods based on  a contract initiated in South Carolina with the destination of the goods transported being Greenwood, South Carolina.

## FACTUAL ALLEGATIONS

11.     That on or about June 6, 2023, Bay Island purchased a policy of insurance

through the Correll Insurance Group, LLC from Liberty Mutual.  The insurance provided coverage of goods owned by Bay Island for losses that occurred during the transportation of those goods. The policy purchased provided coverage from June 6, 2023, through June 6, 2024, and was more particularly identified as Policy # (24) 63 21 78 47.

12.     Bay Island paid all applicable premiums as good consideration for the policy and the insurance protections provided.

13.     In April 2024, Bay Island contacted Priority 1 to provide transportation services for goods located at its Wildcat Retro Brands facility wherein those goods were to be transported to Bay Island's facility at Greenwood, South Carolina.  Priority agreed to provide the services requested for a fee which Bay Island agreed to pay.

14.     The terms of this transportation was very specific as to the size of the load (goods) which required an tractor trailer transport, the date and time of pick up ( April 12, 2024 between 9am and 11am), the location of pick up (3225 Union Pacific Ave, LA 90023), the destination for the goods, (1415 Emerald Road, Greenwood, SC 29646), and the specification of loading equipment to accompany the tractor trailer (lift gate).

15.     Priority 1 agreed to the terms of the transportation, and Bay Island agreed to pay for the cost of transportation which was good and sufficient consideration for the agreement entered into between the parties.

16.     On April 12, 2024, a tractor trailer of the type designated in the agreement with Priority 1 arrived at the Wildcat Retro warehouse within the time limit and with the necessary equipment required for loading. The specific type of trailer used, one with an integrated lifting platform, is a specialized piece of equipment which must be specifically requested at the time of placing the transportation request.

4

17. The driver of the tractor trailer produced a bill of lading prepared by Priority 1 confirming authorization for the loading and transportation of the goods. The terms of the transport on the bill of lading were accurate.

18. Bay Island assisted in the loading of its product and the tractor trailer left the warehouse facility enroute to Greenwood, South Carolina.

19. The tractor trailer driver, upon picking up the load, timely returned a copy of the bill of lading to Priority 1 as required by Priority 1. The return of the bill of lading confirmed to Priority that its driver had obtained the load of product and was making the transport under the terms of the agreement between Priority and Bay Island.

20. At no subsequent time did another driver or truck come to the facility seeking to load the goods for transportation. Upon information and belief, had the truck that transported the goods from Bay Islands facility been an unrelated third party who intervened into the transaction without the direction of Priority or its agents, another driver and truck should have arrived seeking the load which was dispatched by Priority or its agents.

21. Thereafter, when Bay Island made inquiries into the status and location of the goods under transport, Priority 1 confirmed the authenticity of the transport per its agreement and advised that the goods were enroute.

22. After a significant delay and despite reasonable and repeated inquiries, Bay Island received notification from Priority 1 that its goods were lost and presumably stolen. Bay Island immediately notified law enforcement. Despite a law enforcement investigation, the goods have never been recovered.

23. Based on the report of theft and loss of its goods while in transit, Bay Island presented a claim to Liberty Mutual for the loss of its goods under the policy of insurance

coverage previously identified.

24.     Bay Island also made claim for reimbursement for its lost product from Priority 1 with whom it had contracted for transportation.

25.     On September 17, 2024, Liberty Mutual denied the claim presented under the insurance policy stating as a basis for its denial a clause in the contract the excluded coverage if the insured "voluntarily parted" with its goods. However, this exclusion per policy language did not apply when the insured in "good faith" relied on bills of lading or shipping receipts.

26.     Thereafter, on January 15, 2025, and on July 18, 2025, Bay Island, through legal counsel, presented facts based on its investigation showing its good faith reliance in placing the good in transport including the bill of lading and the facts as recited above.

27.     Despite repeated requests, Liberty Mutual has denied coverage and refused to pay in accordance with its contract of insurance coverage.

28.     In similar fashion, Bay Island has, in the alternative, sought compensation for its losses from Priority with whom it had an agreement for the transportation of its goods.

29.     Priority 1 has failed and refused to reimburse Bay Island for the loss occasioned while the goods were placed with Priority 1 per the agreement recited above.

### FOR A FIRST CAUSE OF ACTION AGAINST LIBERTY MUTUAL
### (BREACH OF CONTRACT)

30.     Bay Island and Liberty Mutual entered into a written contract wherein Liberty Mutual agreed to provide insurance coverage for the loss of goods while in transit.

31.     Bay Island paid all applicable premiums and the policy was in full force and effect at the time Bay Island suffered losses.

32.     The losses suffered by Bay Island were covered under the policy.

6

33. Liberty Mutual is in breach of the contract for failing and refusing to pay all losses incurred by Bay Island.

34. As a result of the breach of contract, Bay Island has suffered losses in excess of the coverage limits of $200,000.00, together with pre-judgment interest, and other consequential and incidental losses incurred as a result of the breach by Liberty Mutual, said amounts to be determined by the trier of fact for actual damages.

## FOR A SECOND CAUSE OF ACTION AGAINST LIBERTY MUTUAL
### (DECLARATORY RELIEF)

35. Bay Island would allege and incorporate by reference all prior allegations.

36. Bay Island is informed and believes that its losses are covered under the terms of the insurance policy issued by Liberty Mutual.

37. Liberty Mutual has denied the losses are covered based on an exclusion of coverage within its policy.

38. The action is brought pursuant to Section 15-52-10 et. Seq. of the *South Carolina Code of Laws* (1976 as amended), more commonly known as the South Carolina Declaratory Judgment Act.  Bay Island seeks a declaration from this court or the trier of fact that the insurance policy provides coverage for its losses.

39. Bay Island is informed and believes that it is entitled to a ruling from this court confirming its losses are covered under the policy together with costs and attorneys' fees as determined by the trier of fact because the filing of this action was necessary to enforce coverage.

## FOR A THIRD CAUSE OF ACTION AGAINST LIBERTY MUTUAL
### (BAD FAITH/UNREASONABLE CLAIMS PRACTICES)

40. Bay Island would allege and incorporate by reference all prior allegations.

41.     The actions of Liberty Mutual in denying the claims made by Bay Island were in bad faith and constituted unreasonable claims practice in violation of the duty owed by Liberty Mutual to act in good faith in the resolution of Bay Island's claims.

42.     Bay Island would respectfully allege and show that Liberty Mutual breached its covenants of good faith and fair dealing under its insurance policy in one of more of the following particulars:

a)     In failing to pay the sums due under the policy;

b)     In failing to make timely payment based on the coverage under the policy;

c)     In failing to acknowledge the claims were within the terms of the policy of coverage and with reasonable promptness pay the claims;

d)     In failing to adopt and implement reasonable standards and protocols for the prompt investigation and payment of claims covered under the policy;

e)     In without just cause failing in good faith to make a prompt, fair, and equitable settlement of claims;

f)     In forcing Bay Island to institute suit to recover the amounts reasonably due under the policy;

g)     In providing false and misleading explanations and information as to the denial of the claim and the application of exclusion provisions of the policy;

h)     In taking inconsistent and unreasonable positions as to the terms of coverage and exclusions;

i)     In failing to reconsider the claim as new facts were presented;

j)     In lacking an objective basis from independent experts justifying the denial of claims;

k)     In failing to conduct a fair and reasonable investigation into the claims presented, and,

8

l)    In failing to provide timely and accurate information to the insureds regarding the terms of the policy and its investigation into the claims made.

43.    As a direct and proximate result of the actions by Liberty Mutual constituting bad faith and unreasonable claims practices, Bay Island has been damaged due to the loss of its property, the failure to timely pay its claim, prejudgment interest, attorney's fees in an amount of actual damages and further is informed and believes is entitled to punitive damages, all to be determined by the trier of fact.

**FOR A FOURTH CAUSE OF ACTION AGAINST LIBERTY MUTUAL**
**(BREACH OF FIDUCIARY DUTY)**

44.    Bay Island would allege and incorporate all prior allegations.

45.    Liberty Mutual by issuing the policy previously described agreed and promised that it would timely pay for all losses insured.

46.    The issuance of the policy and the payment of all applicable premiums created a fiduciary relationship between the parties.

47.    Bay Island submitted claims in a timely manner and fully cooperated with Liberty Mutual, but these claims have been unreasonably denied.

48.    That at all times alleged herein, there existed a fiduciary relationship between the Liberty Mutual and Bay Island which required Liberty Mutual to timely pay all benefits owed under the policy, to disclose all material facts to Bay Island, and to act at all times with the utmost care with respect to the handling of the claims presented by Bay Island.

49.    When the duty to pay the claims timely arose, the funds owed were no longer the property of Liberty Mutual, said sums were held by Liberty Mutual for the benefit of Bay Island, thereby, further creating a fiduciary relationship between Liberty Mutual and Bay Island.

50.     Liberty Mutual has breached its fiduciary duties owed to Bay Island by the acts and omissions set forth herein all to the damage and loss to Bay Island.

51.     Bay Island is informed and believes that said breaches have damaged Bay Island due to its loss of money owed under the policy, prejudgment interest, attorney's fees, cost of litigation and other losses due to delays in fulfilling orders to its customers and its loss of reputation in the business community in which it operates; all in a sum to be determined by the trier of fact for both actual and punitive damages.

### FOR A FIFTH CAUSE OF ACTOIN AGAINST LIBERTY MUTUAL
### (ATTORNEY'S FEES, SC CODE SEC. 38-59-40)

52.     Bay Island would incorporate all prior allegations.

53.     More than ninety (90) days have passed since Bay Island made a claim and demand for its losses under the policy of insurance issued by Liberty Mutual, but no payment has been made.

54.     Bay Island is informed and believes that as a result of the failure to pay, it is entitled to attorneys fees and costs pursuant to the *South Carolina Code of Laws* Sec. 38-59-40 and other provisions as may be applicable.

55.     Bay Island is informed and believes it is entitled to actual damages inclusive of attorney's fees and costs incurred and punitive damages in amounts to be determined by the trier of fact.

### FOR A SIXTH CAUSE OF ACTION AGAINST PRIORITY
### (BREACH OF CONTRACT)

56.     Bay Island would incorporate all prior allegations.

57.     Bay Island and Priority 1 entered into a contract wherein Priority agreed to transport goods and property of Bay Island from California to South Carolina in return for a

certain amount of money.

58.     Bay Island paid the agreed upon price for transport thereby providing goods and valuable consideration for the agreement of Priority to provide transportation services.

59.     As provided under the bill of lading and its agreement with Priority, Bay Island turned over its goods for transport upon the arrival of a truck driver at the specified time and conditions when the driver presented a bill of lading from Priority.

60.      Priority is in breach of the contract by failing to transport the goods and property of Bay Island, and, in the process, losing the property of Bay Island.

61.     As a result of the breach of contract, Bay Island has suffered losses in the value of its goods, together with prejudgment interest, and other consequential and incidental losses incurred as a result of the breach said amounts of actual damages to be determined by the trier of fact.

### FOR A SEVENTH CAUSE OF ACTION AGAINST PRIORITY
### (CONVERSION)

62.     Bay Island would incorporate all prior allegations.

63.     Priority 1 through the issuance of a bill of lading and its engagement of agents to act on its behalf, secured the property of Bay Island.

64.     Once in possession of Bay Island's property, Priority converted the property for its own use and deprived Bay Island of both possession and use of its property.

65.     The conversion of Bay Island's property was done without permission.

66.     As a result of this unlawful conversion, Bay Island has lost the its property that it owned; been deprived of the use of this property including the right to market and sell the property; further the unlawful conversion required Bay Island to produce more goods to fulfill its

commitments to customers all to its loss and damage for both actual and punitive damages in an amount to be determined by the trier of fact.

## FOR AN EIGHTH  OF ACTION AGAINST PRIORITY
### (BREACH OF TRUST)

67.     Bay Island would incorporate all prior allegations.

68.     Bay Island entrusted its goods and property into the care, custody, and control of Priority upon the presentation of a valid Bill of Lading presented by the truck driver who arrived at the time specified with the documentation provided by Priority.  The bill of lading was a Priority bill containing information provided to Priority by Bay Island and not available to any other party except those under Priority's control.

69.     Bay Island's property was never found or recovered after Priority assumed control over the property.

70.     The loss of Bay Island's property constituted a breach of trust based on the promises and representations made by Priority 1, which, among other things, promised to deliver Bay Island's property safely to the intended location in Greenwood, South Carolina.

71.     As a result of the breach of trust, Bay Island has lost the value of its property, lost reputation among its customers due to delay in supplying goods as promised, suffered prejudgment interest, and incurred attorney's fees and costs to recover its losses, all resulting in actual damages.  In addition, Bay Island is entitled to punitive damages for Priority breach of trust; the amount of both actual and punitive damages to be determined by the trier of fact.

## FOR A NINTH CAUSE OF ACTION AGAINST PRIORITY
### (NEGLIGENCE)

72.     Bay Island reincorporates all prior allegations.

73.     Priority through its agents, servants, employees and subcontractors was negligent,

12

reckless, willful and wanton, in one or more of the following particulars:

a) In failing to have proper procedures and protocols to prevent the theft of property of its customers;

b) In failing to prevent the theft of property of its customers;

c) In failing to properly monitor the pick-up, loading and transportation of its customer's property;

d) In failing to properly secure information within its computer and internet systems to avoid its unauthorized use;

e) In failing to properly investigate subcontractors used for purpose of fulfilling obligations to its customers;

f) In failing to exercise appropriate oversight of its subcontractors to prevent the theft of its customer's good:

g) In failing to require subcontractors investigate, monitor, approve their agents and require subcontractors to secure their computer systems;

h) In failing to insure that all bills of lading it issued bore the correct name of the actual company/driver intended to take possession of the goods of its customers;

i) In failing to have proper protocols and safeguards to monitor the loading and delivery of property under its care, custody, and control;

j) In failing to act as a reasonable providers of transportation services would act in the loading and delivery of property under its care, custody, and control;

k) In failing to use the degree of care and caution required of a provider to transportation service in like and similar circumstances; and,

l) In such other and further particulars as will be proven at trial.

74. As a direct and proximate result of the aforementioned acts of negligence, recklessness, willfulness and wantonness by Priority through the actions of its agents, servants, employees and/or subcontractors, Bay Island has suffered damages inclusive of the loss of its property, the cost to reproduce the goods lost, the loss of sales, and the loss of reputation due to

the delays caused by Priority's action all in an amount to be determined by the trier of fact for both actual and punitive damages.

**FOR A TENTH CAUSE OF ACTION AGAINST PRIORITY 1**
**(UNFAIR TRADE PRACTICES)**

75.     Bay Island incorporates all prior allegations.

76.     The actions of Priority 1 constituted unfair trade practices as defined by *South Carolina Code* Sec. 39-10-160 (1991).

77.     Bay Island has suffered ascertainable losses as a result of the willful employment of unfair and deceptive trade practices and acts by Priority 1 through the actions of its agents, servants, employees and/or subcontractors.

78.     To the extent Priority 1 subcontracted with other entities to provide transportation services for Bay Island's goods and property, the use of subcontractors without proper vetting and without proper safeguards resulted in the theft of Bay Islands property and as such has adversely affected the public who depends on reliable transportation services and acts and losses have the potential for repetition.

79.     Bay Island is entitled to treble damages for the losses it has incurred, as previously alleged, pursuant to the *South Carolina Unfair Trade Practices Act* as provided in *South Carolina Code,* Sec 39-5-40 (1991).

WHEREFORE, Bay Island is informed and believes that it is entitled to judgement against the Defendants for both actual and punitive damages.

Respectfully Submitted,

 *s/Russell W. Patrick*
Russell W. Patrick, Fed ID# 12208
Douglas F. Patrick, Fed ID# 300
***Patrick, Lewis, & Watts, PA***

14

211 Pettigru Street
Greenville, SC 29601
(864) 240-5500
rpatrick@plw.law
dpatrick@plw.law


__s/Edward S. McCallum, III__
Edward S. McCallum, III
P.O. Box 148
Greenwood, SC 29648
864-223-8546
mccallum@esmlegal.com
Federal Bar No. 6831


Attorneys for the Plaintiff

September 16, 2025
Greenville, South Carolina

15